WIMBISH v. CASCADEN.

(Third Division.   Fairbanks.   November 19, 1906.)

No. 468.

1. MINES AND MINERALS (§ 112*)—MECHANICS' LIENS—WORKING PLACER MINE.

Lienors were employed by the lessees of a placer mine to work in doing cross-cutting, driving tunnels, and work tending to explore and develop the mine. The gravels extracted were washed up and the gold extracted. The owner was interested in the leases 40 per cent., and was present and had full knowledge of the services of the lienors. The leases were not on record, and the lienors had no notice of the true condition of the ownership. The owner did not post any notice that he or the property would not be responsible under the lien laws. *Held*, the mining claim was subject to the liens filed by the laborers.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 233–235; Dec. Dig. § 112.*]

This is a suit to foreclose six laborers' liens on a placer mining claim. The plaintiff and five other miners performed labor in running tunnels and otherwise developing No. 13A below discovery on the right limit of Cleary creek, in the Fairbanks mining district. They filed separate liens. Five of his colaborers assigned to Wimbish, and all the liens are included in this suit.

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

Each lien notice alleges that D. H. Cascaden, the defendant, is the owner of the mine upon which the labor was expended. This is also alleged in the complaint and admitted in the answer. There is no real dispute but that each laborer performed the service for which he filed the lien and upon which suit is based. The defense rests upon the objection that the labor was performed for a lessee in charge, and not for the defendant. In defendant's answer he alleges that on or about November 1, 1904, he leased the mine to one R. McMillan, and that on or about April 1, 1905, McMillan sublet to Cline, Runner, Longvich, and Saitz; that some changes were made in these parties by assignment to other sublessees; and that it was for these sublessees that plaintiff and his colaborers and assignors worked in the mine. This was denied by plaintiff's reply.

Upon the trial it was disclosed by the evidence of the defendant that on October 21, 1904, he entered into a written lease with S. W. Gundaker, E. C. Dean, and Robert McMillan, whereby he leased to them all of the mine in question commencing at a point 900 feet below the upper center end stake, and extending thence the full width of said claim to the lower end thereof. The lease provided that the lessees were "to have and to hold the said leased premises until all the gold and other valuable minerals found in said premises in paying quantities shall have been mined and extracted therefrom," and the lessees agreed "that in consideration of the privileges herein granted they will pay and deliver to the said party of the first part, forty (40) per cent. of the gross output of all gold or other valuable minerals mined or extracted from said premises."

The evidence further disclosed that on the 16th of May, 1905, a lease was made by McMillan and the defendant, Cascaden, to Cline, Runner, Longvich, and Saitz for a portion of the ground leased by Cascaden to McMillan, Gundaker,

and Dean, and upon the same terms as to time and payment of 40 per cent. royalty to McMillan. Though not named in the body of the instrument, Cascaden signed it and acknowledged its execution with the other parties. These two leases were never recorded, and there is no evidence that the lien claimant or either of his assignors had any knowledge of their existence or contents until they were offered in evidence on this trial.

Saitz and his colaborers employed the lien claimant and his assignors, though without any particular statement to either of them as to the title by which they held or worked the mine. The evidence further disclosed that, some time after claimant and his assignors were employed, Saitz, who managed the mine for the lessees, left the country, and then the claimants discovered that the mine was being worked by laymen or lessees, and not by Cascaden alone. Thereupon Cascaden consented that the laborers might wash up the pay dirt extracted from the mine in the development work and take the proceeds, as far as they would go, in payment of their wages due. This they did, though Cascaden took a portion thereof to pay either his royalty or another claim. The evidence disclosed that the labor performed by the claimant and his assignors was such as tended to mark out and locate the pay streak in the mine, and consisted generally in running tunnels and cross-cuts, though in doing so the dirt therefrom was hoisted to the surface, and put into a dump for washing to extract the mineral therefrom. The defendant was present and had full knowledge that claimant and his assignors were working in the mine, and did not post notices, as required by section 265, that he would not be responsible for the same, nor otherwise notify the laborers that they must look to the laymen for their wages, and not to the mine.

Jeremiah Cousby, for plaintiff.

Miller, West & De Journal and Mr. McLachlen, for defendant.

WICKERSHAM, District Judge. The plaintiff alleges and the defendant admits that Cascaden was and is the owner of the mine upon which the liens are sought to be foreclosed. He defends upon the ground that the lien claimants were employed by the lessees. The evidence, however, discloses that the leases were not recorded and the claimants had no knowledge of them. When offered in evidence these leases show, also, that Cascaden reserved a royalty therein of a full 40 per cent. of the gross output of the labor of these claimants—40 per cent. of the gross output of the mine—and to that extent he received the actual value of their labor. He was a beneficiary in every pick stroke made by them, and to that extent was interested in the lease with the lessees. They were in a sense partners and coemployers of the claimants. The defendant was interested in the development work done by the claimants, both as an owner and as a working partner with the lessees. Though the lessees might abandon the lease, as they seem to have done, yet the labor of the lien claimants was of a special advantage and value to the defendant and his mine in its character as development work. It tended to and did demonstrate the location of the pay or waste dirt in the mine for future operations therein. Under the terms of the lease the lessees and defendant were jointly interested in the labor of the claimants. To that extent they were mining partners. True, their contract provided that the lessees should pay the laborers; but of that the laborer was not apprised, since the lease was not recorded, and its contents were not otherwise actually called to his notice.

Section 265 of the Civil Code of Alaska provides that:

"Sec. 265. Every building, or other improvement mentioned in section 262, constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein; and the interest owned or claimed shall be subject to any lien filed in accordance

with the provisions of this code, unless such owner or person having or claiming an interest therein shall, within three days after he shall have obtained knowledge of the construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon the land, or upon the building or other improvement situated thereon."

The defendant admits that he did not post any notice on this mine, or give the laborers any other notice that he would not be responsible for the value of the improvements made by them in tunneling and cross-cutting the claim. Without citing authorities in support thereof, it is my judgment that, under the peculiar working of these leases, the knowledge and presence of the defendant on the ground, and his failure to record his leases or post notices, as required by the statute, his mine must be held liable under the statute for the value of claimant's work thereon.

Let findings, conclusions, and decree be drawn in accordance herewith.